UNITED STATES of America, Plaintiff–Appellee,

v.

Vielman JOYA–MARTINEZ, a/k/a Cesar Vielman Joya, Defendant–Appellant.

No. 90–5865.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1991.

Decided Oct. 22, 1991.

Daniel S. Alcorn, Fensterwald & Alcorn, P.C., Vienna, Va., argued, for defendant-appellant.

Lena D. Mitchell, Sp. Asst. U.S. Atty., Alexandria, Va., argued (Henry E. Hudson, U.S. Atty., Renee R. Christina, Sp. Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and MURRAY, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

Cesar Vielman Joya–Martinez, a former Salvadoran intelligence officer, was found guilty by a jury of violating 8 U.S.C. § 1326 (1988), which prohibits an alien who has been arrested and deported from thereafter entering the United States without the express consent of the Attorney General. He was sentenced to six months in prison. On appeal, Joya–Martinez contends that (1) the evidence was insufficient to sustain his conviction, and (2) the district court erred in refusing to order an evidentiary hearing on his claim that his prosecution was selective, vindictive and retaliatory. Finding no merit in either of these contentions, we affirm.

## I

In 1983 Joya–Martinez, a Salvadoran citizen, was arrested and deported for entering the United States illegally. Approximately six years later, in 1989, he was again arrested in Texas for illegally entering the United States and held pending a deportation hearing. When he sought political asylum, venue was moved to Arlington, Virginia, where, on May 29, 1990, an asylum hearing was conducted. The outcome of that hearing is still pending. Nevertheless, in June 1990, after his asylum hearing, Joya–Martinez was formally charged in Alexandria, Virginia with violating 8 U.S.C. § 1326 (1988) in that he was found to be in the United States (at the

hearing in Arlington, Virginia) without the consent of the Attorney General after having been arrested and deported from the United States in 1983.

Contending that his criminal prosecution was selective, vindictive, and retaliatory, Joya–Martinez filed a motion in the district court to dismiss the charges. He stated that he was a Salvadoran intelligence officer with the First Brigade of the Salvadoran Army, the same brigade that is currently under investigation for the widely publicized murders of six Jesuit priests that occurred in November 1989, a month after he left the unit. Since reentering the United States in 1989, JoyaMartinez has spoken publicly both to the Congress and to the press of his personal knowledge of "death squads" operating in El Salvador. He has alleged that the United States government funded the First Brigade and knew of and tolerated many atrocities carried out by death squad members. He has also admitted that while in the Salvadoran Army, he was a member of a death squad and that on eight occasions, under official orders, he murdered prisoners after brutal interrogations and dumped their bodies in secluded areas.

Joya–Martinez also contended in the district court that he should not be subject to penalties for entering the United States illegally when seeking asylum because such penalties would violate Article 31 of the United Nations treaty relating to the status of refugees, to which the United States is a party.[1] *See* Convention Relating to the Status of Refugees, July 28, 1951, art. 31, 19 U.S.T. 6259, 6275, T.I.A.S. No. 6577, 189 U.N.T.S. 150 (original convention); United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, art. I(1), 19 U.S.T. 6223 (United States accession to articles 2 to 34 of the 1951 Convention). The district court denied Joya–Martinez's request for an evidentiary

---

1. Article 31(1) provides as follows:

 The Contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees who, coming directly from a territory where their life or freedom was threat-

 ened in the sense of Article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence.

hearing on the issue of prosecutorial misconduct.

After the government presented its case at trial, Joya–Martinez made a motion for acquittal, contending that the government failed to prove that he was in the United States illegally, an element that he maintains is necessary to prove a violation of § 1326. In particular, he argues that because he was eligible for a visa under 8 U.S.C. § 1182(a)(17) (1988), the government was required to prove that he did not have a visa in order to demonstrate his illegal status in the United States. The district court denied the motion for acquittal and the jury found him guilty of violating § 1326. He was sentenced to six months in prison, which have been served. Preferring, however, not to be deported to El Salvador, he remains in custody of the INS pending resolution of the asylum hearing.

On appeal Joya–Martinez presses two points. He contends that (1) the government failed to prove the required elements of § 1326, and (2) the district court abused its discretion in denying him an evidentiary hearing on the issue of prosecutorial misconduct. For strategic reasons, he has not pursued the issue of whether his prosecution violated Art. 31 of the United Nations treaty. When pressed at oral argument for confirmation of this decision to abandon that argument, counsel for Joya–Martinez argued that Joya–Martinez might be better off serving his time in the United States and thereafter possibly receiving asylum than in winning the criminal case and then being deported to El Salvador. Accordingly, we express no view as to whether Joya–Martinez's prosecution is in violation of Art. 31 of the United Nations Convention and address only the two narrow issues raised on appeal.

## II

To obtain a conviction under 8 U.S.C. § 1326 (1988),[2] the government must show "(1) that the defendant is an alien who was previously arrested and deported, (2) that he re-entered the United States voluntarily, and (3) that he failed to secure the express permission of the Attorney General to return." *United States v. Espinoza–Leon,* 873 F.2d 743, 746 (4th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). JoyaMartinez does not dispute the government's contention that it adequately proved the elements necessary to support a conviction under § 1326 as set forth in *Espinoza–Leon.* Rather, he argues that because his 1983 deportation does not, after five years, preclude his receiving a visa without the Attorney General's consent, *see* 8 U.S.C. § 1182(a)(17)(1988),[3] his prosecution under § 1326 requires proof that he entered the United States unlawfully; i.e., without a visa. He notes that in 1981, § 1182(a)(17) was amended to establish only a five year period following deportation during which an alien is ineligible to receive a visa without the consent of the Attorney General. Prior to the amendment the Attorney General's consent was required for readmission at any time after arrest and deportation. Joya–Martinez argues that the 1981 amendment should be read to modify the elements necessary to prove a criminal violation of § 1326.

While Joya–Martinez correctly argues that if he had obtained a visa, as § 1182(a)(17) allows, he could not have been prosecuted under 8 U.S.C. § 1326, *see United States v. Bernal–Gallegos,* 726 F.2d 187, 188 (5th Cir.1984), it does not follow that § 1182(a)(17) adds an additional

---

2. § 1326 reads in relevant part: "Any alien who—(1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission ... shall be fined under Title 18, or imprisoned not more than 2 years, or both."

3. § 1182(a) reads in relevant part: "classes of excludable aliens who are ineligible to receive visas and who shall be excluded from admission into the United States: [include] (17) [a]liens who have been arrested and deported ... and who seek admission *within five years* ... of the date of such deportation or removal, unless prior to their embarkation or reembarkation ... the Attorney General has consented to their applying or reapplying for admission." (emphasis added).

element of proof to establish a violation of § 1326.

When Congress amended § 1182(a)(17) in 1981, it apparently did not coordinate the amendment with § 1326 and thereby created what might seem to be an inconsistency between the two code sections. Section 1326 imposes a penalty on reentering the United States without the consent of the Attorney General *at any time* after a person has been arrested and deported. Section 1182(a)(17), on the other hand, permits a person who has been arrested and deported to obtain a visa for reentry without the Attorney General's consent if five years have elapsed. Apparently, the discrepancy was not noticed when the 1981 amendment was debated. The legislative history of the amendment reveals no reference to § 1326. *See* H.R.Rep. No. 97–264, 97th Cong., 1st Sess. 20, *reprinted in* 1981 U.S.Code Cong. & Admin.News 2577, 2589. Thus, when interpreting § 1326 to determine the elements necessary to prove a violation, we are left with the plain language of the statute, which all parties agree is satisfied by the proof offered by the government.

■ An implied amendment or partial repeal of a statute will not be recognized by the courts, unless it clearly appears the legislature so intended. *See Morton v. Mancari,* 417 U.S. 535, 549–551, 94 S.Ct. 2474, 2482–2483, 41 L.Ed.2d 290 (1974) (citing cardinal rule that repeals by implication are disfavored); *United States v. Hansen,* 772 F.2d 940, 944–48 (D.C.Cir.1985) (searching for indication of intent of implicit repeal "strong enough to overcome the contrary presumption"), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986); *United States v. Lund,* 853 F.2d 242, 247–49 (4th Cir.1988) (rejecting claim of repeal by implication absent statutory language or legislative history to the contrary). Because § 1182(a)(17), as amended, makes no reference to § 1326 and the legislative history reveals no intent that the former amend or repeal the latter, we conclude that § 1326 continues to articulate all the elements necessary to prove a violation.

While we hold that § 1326 has not been amended or repealed by implication, we do not deny Joya–Martinez the benefit of a defense based on the 1981 amendment to § 1182(a)(17), namely that he was legally in the country because he had obtained a visa as permitted by that amendment. The burden of establishing the defense, however, rests with him. Both statutes can be read to accommodate the congressional purposes without, in effect, amending § 1326 by implication. The crime remains as defined by that section and the government must prove its prima facie case by establishing each element specified in § 1326. Section 1182(a)(17) is given effect as a defense if the defendant can demonstrate the issuance to him of a visa in accordance with its provisions. The enabling criterion of § 1182(a)(17), that five years have elapsed, thereby creating a possibility that a visa could have issued, does not alone provide a defense. The defendant must demonstrate that he has taken advantage of the privilege by actually having obtained a valid visa. *See United States v. Bernal–Gallegos,* 726 F.2d at 188.

In this case Joya–Martinez has not suggested that he was ever in this country legally or that he possessed a visa as permitted by § 1182(a)(17). Rather, his narrow contention is that the government failed, as an element of its case, to prove the absence of a visa, a position that we reject.

### III

■ Joya–Martinez also contends that the district court abused its discretion in failing to grant him a hearing on his charge of prosecutorial misconduct based on the contention that his prosecution was selective, vindictive, and retaliatory. He argues that because he spoke out to Congress and the media about the death squads and alleged an involvement by the United States, he was treated unusually and therefore improperly. He points to the facts that: (1) the indictment against him was returned shortly after the asylum hearing took place and prior to a decision on his petition for asylum, (2) no similar prosecution has occurred when a political asylum case was pending, at least to the

knowledge of two immigration lawyers whose affidavits were presented, and (3) the prosecution apparently contravenes the provisions of Art. 31 of the United Nations Convention Relating to the Status of Refugees.[4]

 Joya–Martinez has shown neither a discriminatory motivation nor a discriminatory effect in the enforcement of the law, as he is required to do to support a claim of prosecutorial misconduct. *See Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (to prove selective prosecution defendant must show discriminatory effect and motivation). No evidence has been presented that Joya–Martinez was treated differently from any other similarly situated refugee. Nor has evidence been presented even to suggest that his speaking out was a motivating factor in bringing the charges. To support a demand for an evidentiary hearing, Joya–Martinez would have to make a showing of both elements sufficient to raise a legitimate issue about the propriety of the governmental conduct. *United States v. Greenwood,* 796 F.2d 49, 52 (4th Cir.1986). We cannot say that the district court abused its discretion in determining that Joya–Martinez satisfied neither of these requirements. *See id.* (appellate reversal is appropriate only upon showing of abuse of discretion).

The fact that two immigration attorneys are aware of no other § 1326 prosecutions of persons seeking asylum in no way addresses the question of whether the government has afforded different treatment to persons in the same circumstance as Joya–Martinez. In other words, their testimony sheds no light on whether the government has, even once, deferred prosecution of an individual who was arrested and deported, and then illegally reentered the country without the permission of the Attorney General and petitioned for asylum. Joya–Martinez has pointed to no similarly situated individual to measure whether his treatment was different. Nor has he made any showing that his public comments about death squads in El Salvador were in any way a motivating factor for his prosecution. The most he can muster is proof that he spoke out on the issue, which received significant media attention.

In short, no evidence has been presented to demonstrate that the government improperly enforced the criminal laws of the United States. We can, therefore, find no abuse of discretion by the district court in denying an evidentiary hearing without a greater evidentiary showing.

The judgment of the district court is

AFFIRMED.

---

**4.** Once again, since Joya–Martinez has elected not to raise the treaty question on appeal, we do not consider whether his prosecution violates the United Nations convention. Nor do we assume the question in his favor in considering whether the district court should have granted a hearing with regard to his allegations of prosecutorial misconduct.