**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stephon EDWARDS, Defendant–Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**John E. Brown, Defendant–Appellant.**

**Nos. 98–4428, 98–4461.**

United States Court of Appeals,
Fourth Circuit.

Argued June 11, 1999.

Decided Aug. 11, 1999.

**ARGUED:** James Mixon Griffin, Simmons, Griffin & Lydon, L.L.P., Columbia, South Carolina, for Appellants. Robert Claude Jendron, Jr., Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** Nathan Roberson, Columbia, South Carolina, for Appellant Brown. J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellee.

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.

## OPINION

LUTTIG, Circuit Judge:

Appellants Stephon Edwards and John Brown appeal from their convictions for conspiracy to commit mail fraud and from the sentences imposed on them by the district court pursuant to the federal sentencing guidelines. For the reasons set forth below, we affirm.

### I.

During the summer of 1994, Ernest White was appointed by the Governor of South Carolina to serve as a magistrate for Jasper County. Although South Carolina law requires that magistrates hold either a high school diploma or general equivalency diploma (GED), White had neither.

Upon learning that White lacked the proper qualifications for the job, State Senator McKinley Washington, who had recommended White's appointment to the Governor, enlisted the assistance of State Department of Education senior executive assistants Luther Seabrook and Stephon Edwards. Edwards then supplied White with GED exam study materials. Shortly thereafter, White informed Edwards that he was overwhelmed by the materials, and that it would be difficult for him to pass the exam.

On August 5, Edwards hand-delivered two GED exam applications to the Department of Education: one for John Brown, his friend and a certified public accountant, and the other for White. Edwards testified that Brown had agreed to tutor White.

The application that Edwards submitted for White contained accurate data, but the one he submitted for Brown did not. Brown's application, filled out by Edwards, contained an incorrect social security number and stated that Brown had completed only the eleventh grade and was taking the GED to become eligible for post-secondary education or training. Attached to the application was a GED brochure that indicated that test results would be delivered by mail.

The GED office's standard procedure was to mail an admission ticket, which stated that test results would be mailed to each applicant once his application had been processed. The tickets for Brown and White were generated on August 9.

Brown and White took the GED exam on August 13. At the exam, all examinees were informed by test proctors that they would receive their test results by mail.

Two days after the exam, Edwards and Brown entered the GED office. They obtained White's and Brown's test materials, brought them back to Edwards' office, and altered them to create the appearance that Brown's materials belonged to White and vice versa. Edwards then returned the test materials to the GED office.

The GED staff soon discovered that Brown's and White's test materials had been switched. Edwards and Brown were both charged with mail fraud under 18 U.S.C. §§ 1341, 1346, and conspiracy to commit mail fraud under the general criminal conspiracy statute, 18 U.S.C. § 371.

A forensic investigation revealed that the identification information on the answer sheet White filled out during the exam had been erased and that Brown's identification information had been written over the erasures. The same investigation showed that Brown's answer sheet had not been altered. The form was therefore either left blank on the day of the exam or was filled in on that day with White's identification information in Brown's handwriting. The proctor responsible for reviewing completed exams did not report that White's answer sheet lacked identifying information.

At trial, the government introduced evidence suggesting that both White's and Brown's admission tickets were sent to them by mail in the ordinary course of business. Edwards testified that, because he hand-delivered the applications for both examinees to the GED office, he did not foresee that the tickets would be mailed. Edwards also testified that, although test results were mailed in the ordinary course, he intended to pick up Brown's and White's results from the GED office.

With regard to the exam-switching scheme, Edwards testified that the plan was not devised until after the August 9 mailing of the admission tickets. In a pretrial statement, however, he claimed that the idea was initially suggested to him by a friend, Dennis Nielsen, during a golf date before the applications were obtained.

During the second day of jury deliberations, the court excused juror Soles after an *in camera* hearing at which Soles claimed that he had been contacted by a third party about the trial. On December 15, 1997, the jury found both Edwards and Brown guilty of conspiring to commit mail fraud but was unable to reach a verdict on any of the substantive mail fraud charges. The district court sentenced Edwards and Brown to terms of twenty-one and twenty-seven months imprisonment, respectively.

On June 15, 1998, Brown filed a motion for a new trial, claiming that he was selectively prosecuted. The trial court denied the motion, stating that there was no basis in the record to support such a charge. This appeal followed.

II.

Appellants first claim that the district court's instruction to the jury regarding the elements of conspiracy to commit mail fraud allowed the jury to find them guilty without determining that the element of that offense that gives rise to federal jurisdiction—causing the mails to be used—had been satisfied. Specifically, appellants argue that, where, as here, actual use of the mails is not established, the government must at least prove that use of the mails was intended or foreseen by a defendant. Appellants thus challenge the portion of the district court's instruction in which the jury was told that it could find Edwards and Brown guilty of conspiring to commit mail fraud based on proof that use of the mails was *objectively* foreseeable.[1]

Though neither the Supreme Court nor this court has decided the question whether, in the absence of actual use of the mails, objective foreseeability that the mails will be used is sufficient to support a

---

1. In relevant part, the district court's instruction to the jury included the following:

    [T]he crime of conspiracy to commit mail fraud does not require proof of an actual mailing.

    Instead, the crime of conspiracy to commit mail fraud requires, among other things, proof that the persons charged with the conspiracy reasonably contemplated the use of the mail or that the persons charged intended that the mails be used in furtherance of the scheme *or that the nature of the scheme was such that the use of the mail was reasonably foreseeable* .

    J.A. 896 (emphasis added).

mail fraud conspiracy conviction, we are satisfied that the question is resolved by the Supreme Court's holdings in two cases, *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), and *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In *Feola,* the defendants were convicted of assaulting federal officers in the performance of their official duties, *see* 18 U.S.C. § 111, and of conspiring to commit that offense under the same general conspiracy statute at issue in this case, section 371. *See* 420 U.S. at 673, 95 S.Ct. 1255. The court of appeals overturned the conspiracy conviction, holding that the district court erred in failing to instruct the jury that to convict it had to find that the defendants actually knew of the victims' official identities. *See id.* at 675, 95 S.Ct. 1255. The Supreme Court reversed, holding that, in order to prove a conspiracy to assault, the government must establish only the level of scienter required for the underlying substantive offense: "[T]he knowledge of the parties is relevant to the same issues and to the same extent [to a conviction for conspiring to commit a particular substantive offense] as it may be for conviction of the substantive offense." *Id.* at 694–95, 95 S.Ct. 1255.

In *Pereira* the Court addressed the level of scienter required to support a conviction for the substantive offense of mail fraud. In that case, the Court affirmed the defendants' mail fraud convictions in the face of their claim that they never actually contemplated that the mails would be used in furtherance of their scheme, holding that the scienter element of the mail fraud statute is satisfied "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." 347 U.S. at 8–9, 74 S.Ct. 358.

■ It follows *a fortiori* from the holdings in *Feola* and *Pereira* that proof that use of the mails was, objectively, reasonably foreseeable is sufficient to support a

conviction for conspiracy to commit mail fraud. *See, e.g., United States v. Smith,* 934 F.2d 270, 274–75 (11th Cir.1991); *United States v. Turley,* 891 F.2d 57, 59–60 (3rd Cir.1989); *United States v. Reed,* 721 F.2d 1059, 1060–61 (6th Cir.1983). Accordingly, the district court did not err in its instruction to the jury.

### III.

■ Appellants next claim that there was not sufficient evidence for the jury to find that the use of the mails was in furtherance of the exam-switching scheme. We reject this argument as well.

■ We review the sufficiency of the evidence by determining whether "there is substantial evidence, taking the view most favorable to the Government, to support" the verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). To find Edwards and Brown guilty of conspiracy to commit mail fraud, the jury had to find "an agreement [to commit mail fraud], willing participation by the defendant, and an overt act in furtherance of the agreement." *United States v. Dozie,* 27 F.3d 95, 97 (4th Cir. 1994). Appellants do not deny the existence of an agreement to defraud, their willing participation, or the presence of overt acts. They challenge whether there was sufficient evidence for a rational jury to have found beyond a reasonable doubt that the use of the mails was in furtherance of the scheme.

In this regard, appellants first contend that there was insufficient evidence to establish that Brown and Edwards were in agreement before the admission tickets were to have been mailed, and therefore insufficient evidence upon which the jury could have concluded that, in furtherance of a fraudulent scheme, the mails would be used to send the admission tickets. *See* Appellants' Br. at 28. However, based upon the following, the jury could reasonably have determined that the scheme was contemplated before the applications were

even filed, and thus that use of the mails to forward the admission tickets was in furtherance of the fraudulent scheme: Edwards' initial statement that, prior to picking up the applications, he had discussed with Nielsen the option of switching exams, *see* J.A. 778–81; the forged signature on White's application, *see* J.A. 761; Edwards' inclusion of false information on Brown's application, *see* J.A. 769–71; and the fact that Edwards registered Brown to take the GED simultaneously with White, when Brown did not need to take the GED at all and White would no longer need a tutor.

Even were there insufficient evidence to conclude that the scheme began before the mailing of the admission tickets and thus insufficient evidence that the mails were used to send the tickets in furtherance of the fraudulent scheme, the jury could have found that the mailing of the diplomas was both reasonably foreseeable and in furtherance of the fraudulent scheme. The GED office's general policy of distributing diplomas via mail was explained in the written instructions to the applications, *see* J.A. 230, 279, as well as during the oral instructions to the exam, *see* J.A. 84–85. Edwards even conceded that the GED office's mailing of the diplomas would have occurred "under normal circumstances," despite his position that he was trying to obtain the diplomas directly from the GED office. J.A. 787–88, 791. Therefore, even under appellants' theory that the scheme was first contemplated on August 15, when the exams were switched, a rational jury could still have convicted the defendants for conspiracy to commit mail fraud.

■ Although they do not advance the same claim with respect to the diplomas, appellants also claim that the admission tickets were not *necessary* to further the scheme to qualify White. However, although reasonably foreseeable use of the mails is an element of the crime of mail fraud, it is clear under *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), that use of the mails

does not need to be an essential part of the fraudulent scheme. *See id.* at 400, 94 S.Ct. 645; *accord United States v. Snowden*, 770 F.2d 393, 397 (4th Cir.1985); *United States v. Gibson*, 708 F.2d 344, 346 (8th Cir.1983); *see also Maze*, 414 U.S. at 400, 94 S.Ct. 645 (explaining that 18 U.S.C. § 1341 merely requires that the mailing be "for the purpose of executing the scheme" (quoting *Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 89 L.Ed. 88 (1944)) (internal quotation marks omitted)). Here, where the jury could reasonably find that the admission tickets were for the purpose of executing the scheme to qualify White to be a magistrate, and more importantly, where the diploma was essential to qualifying White, the jury obviously could have reasonably found that the mailings were in furtherance of the scheme.

IV.

■ We also reject appellants' claim that the district court committed error in dismissing juror Soles.

After being informed by juror Soles that he had been telephoned at home and told that "those ... two brothers need your help," J.A. 907, the district court conducted an *ex parte* on-the-record interview of the juror and apprised counsel for both parties of the results of that interview. The district court then excused Soles from the jury pursuant to Fed.R.Crim.P. 23(b), which authorizes the district court to excuse a juror for just cause if the remaining eleven jurors can render a valid verdict. Although appellants' counsel requested the court to ask Soles the specific question whether Soles believed that he could continue impartially, the court declined to ask that particular question, reasoning as follows:

> I didn't ask him and I'm not going to ask him and I will tell you why, he's an honorable man, I think he would want to, but I think it puts him in an untenable position....
>
> ....

And I tell you, I talked to him this morning and he was bothered by that phone call. And I just have a concern that that puts him in an untenable position. No matter what he does, it's going to hold him up to some public criticism for his role on the jury. That's the problem.

J.A. 914. Appellants claim that the district court abused its discretion by excusing Soles without specifically inquiring of Soles whether he believed he could continue to serve impartially. They contend that the Supreme Court's decision in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), required that this question be asked by the district court.[2] Appellants' Br. at 33. We disagree.

In *Smith*, the Court merely reaffirmed its earlier holding in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), that a "hearing" is the appropriate vehicle for assessing the impartiality of a juror whose impartiality has been drawn into question. *Smith*, 455 U.S. at 215–16, 102 S.Ct. 940. Nowhere in *Smith* does the Court even hint that any particular question must be asked of the juror whose impartiality is under review.

Here, the district court conducted an on-the-record *in camera* hearing at which it engaged Soles in a detailed conversation about the telephone call he had received and the juror's reaction to the call, during which hearing the juror told the court that the call had "surprised" and "scared" him, that he was "shocked" that someone had his telephone number, and that he had trouble sleeping after the call. *See* J.A. 907–10. The court thereafter apprised both the prosecution and the defense of the telephone call and of the juror's reaction to the call, *see* J.A. 912–17, informing the parties that the court wished to hear from the parties before deciding whether to excuse the juror. In response to that invitation, and at defense counsel's request, the court further questioned the juror in open court, *see supra* note 2. And, finally, the court received and had recorded objections to its conduct of the proceed-

2. Appellants do not object now, nor did they object at trial, to the district court's *ex parte* questioning of Soles. Counsel for appellants did object at trial in part on the ground that counsel themselves, in addition to the court, should have been permitted to question Soles. And appellants at least cursorily reference this latter claim in their brief before us. However, fairly understood, they do not appear to press this claim; rather, they rest only on the claim that the district court was required to ask the specific question whether Soles believed he could continue impartially.

Even if appellants had developed and pressed the claim that it was reversible error for the district court not to allow counsel to *voir dire* Soles, they have offered us no authority in support of such a claim. In neither *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), nor *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), upon which appellants rely, did the Court purport even to require the presence of counsel during the juror interrogation, much less to require in all cases that counsel be permitted to *voir dire* the juror whose impartiality is in question. It is likely that those cases can be read only to require the trial court to conduct a hearing into a juror's impartiality before finally deciding to retain or dismiss the juror, which, of course, the district court did in this case. In fact, in *United States v. Johnson*, 657 F.2d 604 (4th Cir.1981), a case decided long after *Remmer*, in which neither party was present for the juror interview, we affirmed the district court's replacement of a juror with an alternate, holding that the district court's questioning of each of the jurors "without having counsel present [fell] within appropriate steps to insure a fair and impartial jury to decide the case." *Id.* at 606. Even if *Remmer* and *Smith* were read to require that counsel be afforded the opportunity actually to participate before any final decision is made by the court, *see, e.g., Remmer*, 347 U.S. at 229, 74 S.Ct. 450 ("[t]he trial court should not decide and take final action *ex parte* on information" related to the compromise of juror impartiality) (*quoted in Smith*, 455 U.S. at 216, 102 S.Ct. 940), counsel was afforded such an opportunity here. The court explained that it "wanted to get any comment from anybody in th[e] case *before* decid[ing] what [it was] going to do as to excusing Mr. Soles from th[e] case." J.A. 912 (emphasis added). And the court even asked Soles one of the questions that counsel urged he be asked. *See* J.A. 921–22.

ings and to its decision to excuse the juror. Because we believe the district court took sufficient steps in addressing the question of juror Soles' ability to continue service impartially, we cannot conclude that the court abused its discretion because it did not ask the specific question whether the juror believed he could remain impartial.

■ We also reject appellants' second claim that they were deprived of a jury selected from a cross-section of their community when the district court excused Soles, the sole black male juror. Appellants cite no authority requiring a court to keep an individual on the jury because of the juror's race, despite the court's finding of just cause for excusing the juror pursuant to Fed.R.Crim.P. 23(b). In fact, in *United States v. Nelson*, 102 F.3d 1344 (4th Cir.1996), in which two black jurors were replaced with two white jurors because of the black jurors' vacation plans, we explained that "[i]n the absence of any evidence or allegation that the court acted because of race in replacing jurors with alternates, we [could] find no basis to conclude that the [district] court's discretion should be exercised differently when it is considering for racially neutral reasons the replacement of black jurors." *Id.* at 1350. Appellants do not point to anything in the record that even remotely suggests that Soles was excused on the basis of race.

## V.

■ We also reject appellants' claim that the district court erred in refusing to set aside the verdict and to conduct a full evidentiary hearing on their claim that they were selectively prosecuted. Appellants argue that "the selective prosecution of Edwards and Brown [was] improperly motivated by two factors: (1) the race of the defendants, and (2) retaliation for the filing of a civil suit by Brown [against the State Comptroller General's Office]." Appellants' Br. at 36. A claim of selective prosecution is a claim that there was a "defect in the institution of the prosecution." *United States v. Berrigan*, 482 F.2d 171, 175 (3rd Cir.1973); *see also United States v. Schmidt*, 935 F.2d 1440, 1450 (4th Cir.1991). By its terms and without exception, Fed.R.Crim.P. 12(b)(1) requires claims of such "defects in the institution of the prosecution" to be "raised prior to trial."[3] Therefore, as we held in *Schmidt*, appellants' failure to raise the selective prosecution claim before the trial, as required by Fed.R.Crim.P. 12(b)(1), "constitutes a waiver" of such claim. 935 F.2d at 1450.

Appellants cite no authority to the contrary. Appellants claim that *United States v. Joya–Martinez*, 947 F.2d 1141 (4th Cir.1991), and *United States v. Gordon*, 817 F.2d 1538 (11th Cir.1987), *vacated on other grounds*, 836 F.2d 1312 (11th Cir.1988), held that "[a]s long as a defendant presents a 'legitimate issue' about the propriety of the governmental conduct, a hearing must be granted." Appellants' Br. at 42. However, the selective prosecution claims in *Joya–Martinez* and *Gordon*, unlike the one in the present case, were properly raised pre-trial. *See Joya–Martinez*, 947 F.2d at 1142; *Gordon*, 817 F.2d at 1539–40.

## VI.

■ Appellants next contend that the district court improperly applied the eight-level enhancement under U.S.S.G. § 2C1.7(b)(1)(B) for "offense[s] involv[ing] . . . any[public] official holding a high-level decision-making or sensitive position." Appellants argue that the eight-level enhancement of their sentences pursuant to section 2C1.7(b)(1)(B) was incorrect as a matter of law "because the crime for which

---

**3.** Fed.R.Crim.P. 12(b)(1) provides:

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following *must* be raised *prior to trial:* (1) Defenses and objections based on defects in the institution of the prosecution.

*Id.* (emphases added).

Edwards and Brown were convicted was not a function of, and had no bearing on, Edwards' position within the Department of Education." Appellants' Br. at 44. In support of this argument, appellants analogize to the enhancement provision contained in U.S.S.G. § 3B1.3 for abuse of a position of trust. *See* Appellants' Br. at 44–46. The text of section 3B1.3 reads that "[i]f the defendant *abused a position* of public or private trust, ... in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." (emphasis added). In contrast, section 2C1.7(b)(1)(B) reads that "[i]f the offense *involved an* elected official or any *official* holding a high-level decision-making or sensitive position, increase by 8 levels." (emphases added). Although section 3B1.3 may require a strong causal nexus between defendant's position of public trust and the successful execution of defendant's criminal offense, section 2C1.7(b)(1)(B), given the plain meaning of the words "involved an ... official," does not, *see United States v. Manges*, 110 F.3d 1162, 1179 (5th Cir.1997) ("the guidelines do not require proof that [the defendant, a high-level public official,] ... wielded his influence corruptly"), *cert. denied*, — U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). Consequently, it was not error as a matter of law for the district court to have relied upon section 2C1.7(b)(1)(B) to enhance appellants' sentences by eight levels.

### VII.

■■■ Appellant Brown's argument that the district court erred in denying him a reduction in his offense level pursuant to U.S.S.G. § 3B1.2, based on his alleged minimal or minor role in the offense, is meritless. We cannot say that the district court committed clear error, the pre-requisite for appellate reversal of the district court's heavily fact-dependent determination under section 3B1.2, *see* U.S.S.G. § 3B1.2, comment. (bkgd). *See United States v. White*, 875 F.2d 427, 433–34 (4th

Cir.1989) (citing *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir.1989)). It is undisputed that Brown participated in switching the examination papers. *See* Appellants' Br. at 47; Appellee's Br. at 65. The switching of the papers was an essential step in appellants' scheme. Therefore, it was not clearly erroneous for the district court to have concluded that Brown was a "key player," S.J.A. 47, and thus undeserving of a section 3B1.2 role reduction.

### VIII.

■■■ Last, appellants argue that the district court erred in denying their motions for downward departure pursuant to U.S.S.G. § 5K2.0, based on their conduct allegedly falling outside the heartland of cases encompassed by U.S.S.G. § 2C1.7 and on the allegedly aberrational nature of their behavior. This argument, too, is meritless. Even assuming *arguendo* the truth of their allegations and the "extraordinarily harsh" nature of the sentences imposed, Appellants' Br. at 52, the rule in this Circuit renders appellants' argument unavailing: "[T]he *only* circumstance in which review [of a district court's refusal to depart] is available is when the district court mistakenly believed that it lacked the authority to depart." *United States v. Underwood*, 970 F.2d 1336, 1338 (4th Cir. 1992) (emphasis added) (citing *United States v. Bayerle*, 898 F.2d 28 (4th Cir. 1990)). This rule in no way conflicts with the Supreme Court's holding in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), that "[a] district court's decision to depart from the Guidelines" should be reviewed for abuse of discretion, *id.* at 98–99, 116 S.Ct. 2035. A decision to depart is distinguishable from a decision *not* to depart, because remaining within the range prescribed by the Guidelines represents the presumptively correct norm, rather than the exception.

The district court did not "mistakenly believe[ ] that it lacked the authority to depart." At sentencing, the district court stated that it had considered and rejected

the factual basis for downward departure, concluding that defendants had not "met the burden" for departure, J.A. 1271. After an additional post-sentencing opportunity for written briefing, the court issued a written order finding that "[b]ecause such a departure is not warranted …, the Court will not depart," J.A. 1320. Had the district court mistakenly believed that it lacked the authority to depart, it clearly would not have made these findings and rulings. Because the district court understood that it had the authority to depart downward pursuant to section 5K2.0, review of the district court's refusal to depart downward is unavailable.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*