UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

MIGUEL ANGEL LARA ALVAREZ,
        *Defendant-Appellant.*

No. 02-5006

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CR-01-130-FO)

Submitted: April 30, 2004

Decided: May 19, 2004

Before MICHAEL and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed in part, dismissed in part by unpublished per curiam opinion.

---

## COUNSEL

Camille M. Davidson, THE FULLER LAW FIRM, P.C., Charlotte, North Carolina, for Appellant. Frank D. Whitney, United States Attorney, Anne M. Hayes, Christine Witcover Dean, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Miguel Angel Lara Alvarez pled guilty to participating in a conspiracy to distribute and possess with intent to distribute at least 500 grams of cocaine and at least five grams of cocaine base (crack), 21 U.S.C. § 846 (2000), and to possession of a firearm in furtherance of a drug conspiracy, 18 U.S.C. §§ 924(c), 2 (2000). He was sentenced to a term of 151 months for the conspiracy count and a consecutive sixty months for the § 924(c) count. Alvarez seeks to appeal his sentence, alleging that the district court's sentencing decisions were affected by prosecutorial misconduct, that the district court erred in denying him an adjustment for acceptance of responsibility and a downward departure for aberrant behavior, *U.S. Sentencing Guidelines Manual* §§ 3E1.1, 5K2.20, p.s. (2001), and that the district court erred in sentencing him at the high end of the guideline range. We affirm in part and dismiss in part.

Alvarez waived his right to appeal his sentence on any grounds except an upward departure, prosecutorial misconduct, or ineffective assistance of counsel. A defendant may waive the right to appeal if that waiver is a knowing and intelligent decision to forgo the right to appeal. *United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995). Generally, if the district court fully questions a defendant regarding the waiver of his right to appeal during a Fed. R. Crim. P. 11 colloquy, the waiver is both valid and enforceable. *United States v. Wessells*, 936 F.2d 165, 167-68 (4th Cir. 1991); *United States v. Wiggins*, 905 F.2d 51, 53 54 (4th Cir. 1990). The waiver provision does not prevent Alvarez from challenging his sentence based on his claim of prosecutorial misconduct. In addition, because the joint appendix does not contain a transcript of the guilty plea hearing and neither Alvarez nor the government states that the district court addressed the waiver during the Rule 11 colloquy, we are unable to determine whether Alvarez' waiver is enforceable as to the remaining issues. Therefore, we will address all the issues on the merits.

Alvarez and three co-defendants were arrested on September 28, 2001, during a controlled buy of three kilograms of cocaine at co-defendant Jose Meza's store in Robeson County, North Carolina. Alvarez was the person who brought the cocaine to the store. The investigating agents seized a total of 2981.5 grams of cocaine, 25.7 grams of crack, and three firearms from the store and the vehicles used by the conspirators.

In March 2002, the government interviewed Aaron Godwin, who was in custody on unrelated drug charges, and who shared a jail cell with Alvarez for a time. Godwin told investigators that his own supplier, Pammy Gail Cummings, obtained her cocaine from Alvarez. He said that, over a twelve-week period, Alvarez supplied Cummings and her son with a total of 180 kilograms of cocaine. Godwin also stated that Alvarez had $500,000 stored at Cummings' residence and that Cummings used some of this money to hire Alvarez' attorney, Irving Joyner. Based on Godwin's information, the probation officer revised Alvarez' presentence report in May 2002 to include the 180 kilograms of cocaine as relevant conduct.

Joyner represented Cummings in early May at a detention hearing following her arrest on federal firearms charges. On May 14, 2002, the government moved to continue Alvarez' sentencing on the ground that Joyner had a potential conflict of interest. At a hearing on May 15, Joyner denied any conflict of interest and said both Alvarez and Cummings had denied the allegations made by Godwin. He also said that he had been hired and paid by Alvarez' family. He submitted a waiver form Alvarez had signed. The district court continued sentencing and invited the government to file a motion to disqualify Joyner. On July 31, 2002, although Joyner had by then withdrawn from representing Cummings, the government moved to disqualify Joyner based on his representation of both Alvarez and Cummings and because of uncertainty about the source of the funds used to pay Joyner. The government also informed the court that Alvarez had failed a polygraph examination, showing deception on the two relevant questions: (1) whether he ever had any narcotics-related relationship with Cummings, and (2) whether Cummings procured his legal representation, either directly or indirectly.

At a hearing on August 5, 2002, the district court addressed the government's motion to disqualify Joyner. Pammy Gail Cummings

testified that neither she nor her son had a drug relationship with Alvarez. She denied giving his family money to pay his attorney. She also said that Alvarez did not keep any money at her house. She said she had met Aaron Godwin, but that neither she nor her son sold cocaine to him, and that he had never been to her house or her store. Because both Alvarez and Cummings had denied under oath that they had a narcotics relationship and that Cummings had supplied the money for Alvarez' defense attorney, the district court found that no conflict of interest was apparent.

At Alvarez' sentencing in December 2002, Godwin testified that he bought cocaine from Cummings and saw Alvarez deliver ten to fifteen kilograms of cocaine to Cummings' house three or four times. Under questioning by the court, Godwin testified that Alvarez delivered cocaine to Cummings every week or two weeks. Once the cocaine was wrapped in plastic on a pallet of merchandise for Cummings' store and, on three or four occasions, Alvarez brought ten "mud buckets" each containing several kilograms of cocaine. Under cross-examination, Godwin said he helped Cummings cut up and weigh the cocaine, but admitted that he might not have mentioned these kilograms in his prior statement to authorities and that they were not included in his own relevant conduct. He denied reading Alvarez' presentence report while they were confined together.

Alvarez testified that he did not know Cummings or store money at her house and had never seen Godwin until they were confined together after his arrest. He denied delivering cocaine to Cummings and said the only cocaine delivery he ever made was the one that resulted in his arrest. Under cross-examination, he admitted that he might have seen Cummings at the garage where he worked. He repeated the assertions he made during the polygraph test that he had no narcotics-related dealings with Cummings and did not receive money from her for his legal defense.

Alvarez' attorney then introduced four affidavits from inmates who had been confined in the New Hanover Jail with him and Godwin, all of whom stated that Godwin had secretly read Alvarez' presentence report and made notes on the information in it. Curtis Quinn and Terry Highsmith also stated that Godwin said he intended to implicate Alvarez in drug dealing to reduce his own sentence. The government

submitted a later letter from Terry Highsmith stating that what he said in his affidavit was true but that he had since heard that Aaron Godwin bought cocaine from Miguel Alvarez' organization through Cummings. He said he thought that Alvarez had lied to everyone who signed an affidavit on his behalf, or at least had not told the whole truth.

The district court decided that Alvarez' testimony in combination with the affidavits cast doubt on Godwin's motives. The court therefore sustained Alvarez' objections to inclusion of the 180 kilograms of cocaine Godwin ascribed to him. The court found the offense level to be 32, and declined to give Alvarez an adjustment for acceptance of responsibility, which resulted in a guideline range of 121-151 months. Although Alvarez had indicated in his objections to the presentence report that he would seek a minor role adjustment and a downward departure for aberrant behavior, he did not request a downward departure or a mitigating role adjustment in a written motion or offer any argument on these issues at the sentencing hearing despite the district court's invitation to do so. The court imposed a sentence of 151 months, with a consecutive five-year sentence for the § 924(c) conviction.

On appeal, Alvarez first argues that the government's "persistent efforts" to disqualify Joyner constituted prosecutorial misconduct because Joyner represented Cummings on unrelated matters and because Godwin's allegations were fabricated. The Sixth Amendment right to the effective assistance of counsel includes the right to representation that is free from conflicts of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980). "[W]hen a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel." *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991). A trial court has the responsibility to investigate apparent conflicts, advise the defendant personally, and receive the defendant's waiver if he wishes to continue with his current counsel. *Id.* at 379. Improper conduct by the prosecutor merits reversal of a conviction when the conduct actually was improper and prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial or, in this case, a fair sentencing. *See United States v. Golding*, 168 F.3d

700, 702 (4th Cir. 1999) (citing *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990)).

Alvarez contends that he was prejudiced because the government's efforts to disqualify Joyner "probably" caused the district court to infer that he had withheld information and to disbelieve his version of events with respect to disputed sentencing issues.

However, the government had a duty to bring to the district court's attention the potential conflict of interest arising from Joyner's representation of both Alvarez and Cummings. *Tatum*, 943 F.2d at 379-80. Once Godwin made the allegations that Cummings bought cocaine from Alvarez and that Cummings allegedly paid Joyner to represent Alvarez, and the government learned that Joyner was representing Cummings in state court, the government was bound to inform the district court of the situation. The government moved to disqualify Joyner, at the court's request, to protect Alvarez' interest in having conflict-free representation. We conclude that the government's conduct was not improper.

Because Alvarez failed to present evidence challenging the recommendation in the presentence report concerning his role in the offense, the district court was free to adopt the finding recommended in the presentence report without further explanation. *See United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998). The district court adopted the probation officer's suggestion that Alvarez' role was not minor, even if he participated only in one transaction, because his delivery of the drugs was essential to the drug transaction. This finding was not clearly erroneous. *United States v. Akinkoye*, 185 F.3d 192, 202 (4th Cir. 1999) (test is whether defendant's conduct was essential or material to commission of offense); *United States v. Edwards*, 188 F.3d 230, 238 (4th Cir. 1999) (same).

The district court's decision not to depart downward is not reviewable on appeal absent a showing that the court's decision was based on a failure to understand its legal authority to depart. *United States v. Carr*, 271 F.3d 172, 176-77 (4th Cir. 2001). Alvarez has not made this showing. Consequently, this portion of the appeal must be dismissed.

Finally, Alvarez argues that the district court erred in sentencing him at the top of the guideline range in light of his minimal participation in the conspiracy. However, the district court's decision to impose a sentence at any particular point within a correctly calculated guideline range is generally not reviewable. *United States v. Pitts*, 176 F.3d 239, 248-49 (4th Cir. 1999). A claim that the sentence was imposed in violation of law is reviewable, *id.* at n.6, but Alvarez does not make this claim and the record would not support it.

We therefore affirm the sentence imposed by the district court but dismiss the challenge to the district court's decision not to depart and to impose a sentence at the top of the guideline range. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART,*
*DISMISSED IN PART*