**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4020

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DAVID CHRISTOPHER MAYHEW,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Fox, Senior District Judge.  (5:13-cr-00199-F-2)

Argued:  September 13, 2017                        Decided:  November 14, 2017

Before TRAXLER, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Michael W. Patrick, LAW OFFICE OF MICHAEL W. PATRICK, Chapel Hill, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** John Stuart Bruce, United States Attorney, Jennifer P. May-Parker, First Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

David Mayhew appeals several convictions and his sentence arising from a Ponzi scheme he led with another man. Finding no reversible error, we affirm.

Between at least January 2009 and May 2012, Mayhew and Ron McCullough ran a Ponzi scheme in the Raleigh, North Carolina, area, claiming to be successful investors in foreign currency exchange (FOREX) groups. The charges in this case involve 19 victims and more than $2 million lost. McCullough is named as a codefendant in the indictment, but he disappeared before the indictment was issued. Only the charges against Mayhew are involved in this appeal.

McCullough was the primary public face of the scheme and did most of the investment solicitation. Mayhew did meet with some of the victims, but he was not as visible a part of the scheme as McCullough. Nonetheless, all of the victims knew that McCullough worked with Mayhew, whom McCullough called his "brother" and described as the main currency trader. The victims in this case are people from the defendants' church, people that McCullough randomly befriended, and people that some of the victims brought into the scam. As to the various transactions in this case, the defendants followed the same basic modus operandi. They would tell the victims about their successful FOREX trading, and induce initial investments for small sums with guaranteed rates of return over a relatively short period. These initial investments were promptly returned with the promised gains. Thereafter, Mayhew and McCullough would solicit larger investments with similar assurances of high returns over a quick period.

Once these larger investments were made, Mayhew and McCullough would abscond with the funds.

Mayhew and McCullough were eventually charged with one count of conspiracy to commit mail and wire fraud; 15 counts of wire fraud; four counts of mail fraud; and three counts of money laundering. A superseding indictment was issued in July 2014, charging Mayhew with five additional counts of wire fraud, stemming from additional fraudulent investments Mayhew solicited while on pretrial release in this case. These five additional counts were dismissed at the government's request in April 2015, two months before trial.

Following the close of the government's case, Mayhew moved for a judgment of acquittal as to all counts. The district court dismissed five of the wire fraud charges because the government failed to present evidence of an interstate nexus; the jury convicted Mayhew of the remaining 18 charges. The district court sentenced Mayhew to 320 months, which was a significant upward departure and variance from the Guidelines' range of 108 to 135 months that the district court had calculated.

Mayhew does not challenge the conspiracy conviction on appeal. Instead, he challenges the sufficiency of the evidence as to some of the substantive mail fraud and wire fraud counts; argues that the district court should not have given a willful blindness instruction; contends the court erred in determining his role in the offense and in calculating the loss amount for sentencing purposes; and argues that the 320-month sentence is substantively and procedurally unreasonable. None of these arguments warrants reversal.

3

With regard to the challenged wire fraud convictions, even if McCullough was more directly involved with the victims of these counts than Mayhew was, the government at the very least presented sufficient evidence to justify convictions on aiding-and-abetting theories. *See United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983) ("To be convicted of aiding and abetting, participation in every stage of an illegal venture is not required, only participation at some stage accompanied by knowledge of the result and intent to bring about that result." (alteration & internal quotation marks omitted)). As for the challenged mail fraud convictions, the government need only prove that use of the mail can "reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 9 (1954). Thus, Mayhew's actual knowledge as to whether Travis Cox would mail fraudulent statements to McGrath is irrelevant. *See United States v. Edwards*, 188 F.3d 230, 235 (4th Cir. 1999). It is sufficient that Cox's testimony that he told Mayhew he needed statements "that [he] could *send*" made use of the mail reasonably foreseeable. J.A. 1016 (emphasis added). While Mayhew makes much of the fact that Cox and McGrath were friends, he ignores the formal nature of the business transaction entered into between the two men, which included a signed contract and regular receipt of written account statements. J.A. 726-30. Such business formalities limit any inference that hand-delivery, not mail, was the foreseeable method of delivering the fraudulent statements.

And concerning the challenged money laundering conviction, the evidence was at least sufficient to justify a conclusion that Mayhew aided and abetted McCullough's

money laundering by giving him the number of the account to which the offending payment was made.

Regarding Mayhew's challenge to an instruction for willful blindness, any error in giving the instruction was harmless in light of the ample evidence of Mayhew's actual knowledge of the charged financial crimes. *See United States v. Lighty*, 616 F.3d 321, 378-79 (4th Cir. 2010) (explaining that if a district court errs by giving a willful blindness instruction, the error is harmless if "there is sufficient evidence in the record of actual knowledge on the defendant's part"). The same is true for Mayhew's challenge to the content of the instruction, which because it was not raised below, is reviewed only for plain error. *See United States v. Robinson*, 627 F.3d 941, 953-54 (4th Cir. 2010).

Finally, Mayhew's challenges to his sentence are without merit. The district court did not clearly err in enhancing Mayhew's offense level because Mayhew "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," U.S.S.G. § 3B1.1(a), and because the amount of the loss caused was more than $1.5 million but not more than $3.5 million, *see* U.S.S.G. § 2B1.1(b)(1)(I). The district court provided sufficient advance notice of its intention to depart, and it was not required to provide advance notice of its intention to apply a variance. *See* Fed. R. Crim. P. 32(h); *see also Irizarry v. United States*, 553 U.S. 708, 716 (2008) ("The fact that Rule 32(h) remains in effect [post-Booker] does not justify extending its protections to variances . . . ."). And the extent of the district court's variance, though substantial, was not substantively unreasonable in light of the particular facts of this case. *See United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011)

5

(This court reviews "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance . . . for reasonableness pursuant to an abuse of discretion standard.").

In sum, we affirm Mayhew's convictions and sentence.

*AFFIRMED*