UNITED STATES, Plaintiff–Appellant,

v.

Nat SCHLESINGER, a.k.a. Naftule Schlesinger, a.k.a. Zvi Pollack, and Goodmark Industries, Inc., Defendants–Appellees.

Nos. 05–3021–cr, 05–5839–cr, 06–3551–cr, 06–3555–cr.

United States Court of Appeals, Second Circuit.

Jan. 30, 2008.

Herald Price Fahringer, Fahringer & Dubno (Erica T. Dubno and Jeremy T. Gutman, on the brief), New York, NY, for Appellant.

Cynthia M. Monaco, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, on the brief, Peter A. Norling, Lawrence Ferazani and Richard Lunger, of counsel), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. B.D. PARKER, Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Defendants–Appellants Nat Schlesinger and Goodmark Industries, Inc., appeal from judgments of conviction entered on August 4, 2006 and August 2, 2006, respectively, in the Eastern District of New York (Spatt, *J.*).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. Schlesinger was convicted on twenty-eight counts of mail fraud conspiracy, substantive mail and wire fraud, money laundering conspiracy, and substantive money laundering. Schlesinger was also convicted of arson in connection with a December 31, 1998 fire, in violation of 18 U.S.C. § 844(i), and for the use of fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1). Goodmark was convicted on twenty-two counts of mail and wire fraud conspiracy and substantive mail and wire fraud. In a separate opinion issued today, we decide one issue of forfeiture; the rest of the appellate issues are considered below.

1. The District Court allowed Schlesinger's nephew to testify that he overheard Schlesinger's son say to Schlesinger, soon after the 1998 fire, "job well done." "Objections to admission of hearsay statements are reviewed for clear error." *United States v. Desena,* 260 F.3d 150, 157 (2d Cir.2001).

The District Court reasoned that the statement was not hearsay, as it was a co-conspirator statement under Federal Rule of Evidence 801(d)(2)(E). The District Court found, by a preponderance of the evidence, that a conspiracy existed between Schlesinger and his son to commit arson and to file a fraudulently-inflated

insurance claim, and that the son's statement ("job well done") was in furtherance of that conspiracy. That finding was not clearly erroneous.

As to the finding of a conspiracy, the son, a close relative, worked for the business at the premises that burned down, and the testimony is that the comment was made after the son saw the damage caused by the 1998 fire, as if the fire was a "happy thing." Another witness, Israel Schwimmer, testified that he saw father and son together removing multiple bags of documents from the premises the day before the fire.

As to the finding that the comment was in furtherance of the conspiracy, the District Court explained that the statement itself appears to have been part of conspirators' efforts to "inform each other as to the progress or status of the conspiracy," and was therefore made in furtherance of that conspiracy. *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir.1999) (internal citation omitted). Functionally, the statement would assess the arson as suitable to support an inflated insurance claim, which was the next stage of the conspiracy.

■ 2. Defendants argue that the indictment was duplicitous because Count One (alleging conspiracy to commit mail and wire fraud) alleged multiple conspiracies in a single count, and because Counts Two through Twenty–One incorporate by reference the charging language of Count One. "[A]cts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989).

Count One charged conspiracy to commit mail fraud by submitting inflated insurance claims for five fires at the same location. In effect, the indictment alleged that an ongoing business at that location was insurance fraud. *United States v. Aracri*, 968 F.2d 1512, 1522 (2d Cir.1992) (finding "ample evidence of a single conspiracy through which the name of the companies in a 'daisy chain' changed but the conspiracy's goal of avoiding taxes did not"). As to the incorporation by reference of the charging language of Count One into subsequent counts, that is expressly permitted. *See* FED.R.CRIM.P. 7(c)(1).

■ 3. Defendants argue that the superseding indictment should be dismissed (or alternatively, a new trial ordered) because the original indictment was under seal for seventeen months. Citing *United States v. Deglomini*, 111 F.Supp.2d 198 (E.D.N.Y.2000), Defendants contend that undue delay in unsealing an indictment should be considered *per se* unreasonable under the Sixth Amendment.

"[W]hen a sealed indictment has tolled the statute of limitations, the policy of repose underlying the statute demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied." *United States v. Watson*, 599 F.2d 1149, 1154 (2d Cir.1979); *see also United States v. Srulowitz*, 819 F.2d 37, 40 (2d Cir.1987) ("[W]hen the defendant can demonstrate substantial actual prejudice occurring between the date of sealing and the date of unsealing, the expiration of the limitations period before the latter event warrants dismissal of the indictment."). But here, no statute of limitations ran while the original indictment was under seal, and the charges in the superseder were timely when it was unsealed. The prejudice cited here is that an alleged co-conspirator who died while the indictment was under seal "may have proven helpful at trial." We need not decide whether this

event would be consequential if its effect were not speculative.

■ 4. Schlesinger challenges the sufficiency of evidence to convict him of arson and the use of a fire to commit a felony. A defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Griffith,* 284 F.3d 338, 348 (2d Cir.2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the conviction must stand. *United States v. Martinez,* 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citations omitted).

"[C]rimes may be proven entirely by circumstantial evidence." *United States v. Sureff,* 15 F.3d 225, 228 (2d Cir.1994). Here, two investigators (an insurer's expert and the New York City Fire Marshal) testified to their conclusions that the fire was set intentionally. As noted above, another witness saw Schlesinger and his son remove bags of documents from their offices at the property the day before the fire. The doors to the premises—and to third floor shipping area, where the fire was set—were locked when firefighters arrived. Schlesinger and his brother Jack held the only keys to the third floor shipping area. And Schlesinger, who submitted the (inflated) claim thereafter, had a motive to commit the arson.

■ 5. Schlesinger argues that his conviction should be reversed because the government refused to provide a bill of particulars naming the unidentified co-conspirators referenced in the indictment. Specifically, Schlesinger contends that his defense was blindsided when it was revealed at trial that "John Doe # 7," the congratulator on the "job well done," was Schlesinger's son.

A bill of particulars is merited "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990) (quoting *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir. 1989)). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984). "So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion." *Torres,* 901 F.2d at 234 (quoting *United States v. Maull,* 806 F.2d 1340, 1345–46 (8th Cir.1986)).

We see no reason to disturb the District Court's conclusion that a bill of particulars was not required here. The 52–page indictment details the facts and circumstances of the offenses. Moreover, the son's statement was included in the grand jury testimony, which Schlesinger received prior to trial. Schlesinger was not "unfairly surprised at trial" when that testimony was introduced. *Id.*

■ 6. Schlesinger argues that the creditor fraud charges were misjoined with the insurance fraud charges, causing the "highly inflammatory proof" of his defrauding of creditors to taint the jury's view of him. The District Court denied Schlesinger's pretrial severance motion.

"The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED.

R.Crim.P. 8(a).[1] Here, two fraudulent schemes involved the same participants, goals and means. Joinder was proper.

██ 7. Schlesinger contends that the District Court erred in permitting two of Schlesinger's attorneys to testify for the government regarding their roles in the creditor fraud scheme.

"[T]here is a societal interest in enabling clients to get sound legal advice, [but] there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995). A district court can thus admit into evidence communications that would otherwise be protected by the attorney-client privilege where there "is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal activity." *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986).

The District Court's thorough opinion explains that the communications at issue fell within this exception, and cites evidence that the lawyers enabled Schlesinger to buy out his companies' loans and then foreclose on those loans, thus precluding other creditors from reaching the companies' assets. The testimony was appropriately limited to the lawyers' involvement in Schlesinger's creditor fraud.

██ 8. Schlesinger claims that it was improper for his trial to have taken place in the Central Islip courthouse rather than in Brooklyn. He emphasizes that the main events in this case—the five fires—took place in Williamsburg, Brooklyn, and he asserts prejudice by "being dragged out to the far end of Long Island for his trial," to "a strange location where the culture was quite different and he was an alien to those who sat in judgment of him."

The Central Islip and Brooklyn courthouses are in the same venue, the Eastern District of New York. So, Schlesinger's claim seems to be premised on a purported violation of the Eastern District's Guidelines for the Division of Business Among District Judges. But those Guidelines provide that they "shall not be deemed to vest any rights in litigants or their attorneys." Rule 50.1(d). Moreover, the designation of the case to Central Islip was consistent with the Guidelines: a number of the insurance companies whom Schlesinger defrauded were located on Long Island, as was the auction company that sold Schlesinger's equipment in connection with his creditor fraud.

██ 9. Schlesinger claims that the District Court's imposition of the mandatory minimum prison sentences for arson and the use of a fire to commit a felony (five years and ten years, respectively) violated the cruel and unusual punishment clause of the Eighth Amendment and the double jeopardy clause of the Fifth Amendment, and that a jury should decide whether such mandatory minimum sentences are imposed.

The mandatory minimum sentences at issue here do not violate the double jeopardy clause. The elements of the two offenses are not the same. *See United States v. Fiore*, 821 F.2d 127, 131 (2d Cir.1987) ("Section 844(h)(1) requires proof of the commission of any felony (in this case mail fraud) which may be prosecuted in a court of the United States, something not required by Section 844(i). Section

---

1. The briefs submitted by Schlesinger and the government both refer to Schlesinger's severance motion as one brought under Federal Rule of Criminal Procedure 8(a); however, in the court below, Schlesinger sought severance under Rule 8(b). *See United States v. Schlesinger*, 360 F.Supp.2d 512, 522 (E.D.N.Y. 2005).

844(i) requires proof of damaging a building involved in interstate commerce, something not required by Section 844(h)(1)." (internal quotation marks and citation omitted)).

10. Defendants challenge the District Court's order of forfeiture on several grounds.

■ First, Defendants argue that the District Court impermissibly shifted the burden of proof by ordering the forfeiture of the gross amount received as a result of the mail and wire fraud, as opposed to the net proceeds. The mail and wire fraud crimes were "unlawful activities," as defined by 18 U.S.C. §§ 1956(c)(7), 1961(1). The civil forfeiture provision (made applicable to mail and wire fraud by 28 U.S.C. § 2461) calls for the forfeiture of all "proceeds" of unlawful activities; "proceeds" are "not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). So, the wording of the statute forecloses Defendants' interpretation.

■ Second, Schlesinger argues that the District Court erred in determining that the arson premises were "involved in" money laundering and therefore subject to forfeiture. The relevant statute mandates that a defendant forfeit "any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). Evidence at trial showed that Schlesinger deposited the proceeds of his insurance and creditor fraud into the business operating accounts of the companies he ran at the premises, and the proceeds were then used to pay the companies' monthly lease and tax expenses. Accordingly, the premises "served as a conduit for the proceeds of the illegal transactions," making it subject to forfei-

ture. *United States v. All Assets of G.P.S. Auto. Corp.,* 66 F.3d 483, 486 (2d Cir.1995).

■ Third, Schlesinger argues that the District Court erred in ordering the forfeiture of certain funds twice—once as proceeds of mail and wire fraud and once as property involved in money laundering. We disagree. Criminal forfeiture is a form of punishment. *See Libretti v. United States,* 516 U.S. 29, 39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) ("Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct in violation of the federal drug and racketeering laws, not as a separate substantive offense."). Schlesinger's fraud and money laundering are two offenses impacting two distinct sets of victims. "The 'victims' of fraud counts are those persons who have lost money or property as a direct result of the fraud. The 'victim' of money laundering is, by contrast, ordinarily society at large." *United States v. Napoli,* 179 F.3d 1, 7 (2d Cir.1999) (internal citation omitted). Schlesinger does not deny that he is subject to separate sentences for the fraud counts and the money laundering counts; consequently, the proceeds of those crimes are subject to separate orders of forfeiture.

Schlesinger seeks an offset of the funds traceable to the sale of the premises (the Wallabout Property) against the net proceeds from the sale of that property. The government has advised that it does not object to such offset, provided that no third party makes a successful claim against the net proceeds from the sale. Since the parties have the same views as to how the forfeiture process will be conducted, we express no view as to that aspect of the forfeiture order.

We have reviewed Defendants' remaining arguments and find them to be without merit.

Finally, a motion was made, and denied, for the filing of a late reply brief. Thereafter, a motion for reconsideration was made. We grant the motion to reconsider, and we grant the motion to file the reply brief.

For the reasons set forth above and in the companion opinion, the judgment of the district court is hereby **AFFIRMED**.