**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-4167**

---

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

LAMONDES WILLIAMS,

          Defendant - Appellant.

---

**No. 12-4247**

---

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

ERICA BROWN,

          Defendant - Appellant.

---

Appeals from the United States District Court for the District
of Maryland, at Baltimore.  James K. Bredar, District Judge.
(1:11-cr-00162-JKB-1; 1:11-cr-00162-JKB-2)

---

Argued:  September 20, 2013     Decided:  November 27, 2013

---

Before GREGORY and DUNCAN, Circuit Judges, and Samuel G. WILSON,
United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Wilson wrote the opinion, in which Judge Gregory and Judge Duncan joined.

**ARGUED:** John O. Iweanoge, II, IWEANOGE LAW CENTER, Washington, D.C.; Judith Antwi Sakyi, LAW OFFICES OF JUDITH A. SAKYI, Greenbelt, Maryland, for Appellants. Barbara Slaymaker Sale, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILSON, District Judge:

This is a consolidated appeal by Lamondes Williams and Erica Brown challenging their fraud related convictions for operating a vehicle "rent-to-own" program in which their customers were not actually acquiring an ownership interest in the vehicles they were renting. They claim that the evidence was insufficient to show a scheme to defraud. In addition, Williams claims the district court erred in permitting his conspiracy conviction to stand in light of Brown's acquittal of that offense, admitting evidence that he had engaged in other similar schemes, and in applying certain sentencing enhancements. We reject their arguments and affirm.

## I.

A grand jury of the United States District Court for the District of Maryland indicted Williams and Brown on nineteen counts of wire fraud (18 U.S.C. § 1343), eleven counts of mail fraud (18 U.S.C. § 1341), and one count of conspiracy to commit wire or mail fraud (18 U.S.C. § 1349) arising out of a rental scheme that pawned rental cars as rent-to-own vehicles.[1] Williams and Brown pleaded not guilty. During a two-week jury trial, including 22 witnesses for the government and four

---

[1] We refer to the second superseding indictment as the "indictment."

3

witnesses for the defendants, the evidence tracked the seven month operation.

In the light most favorable to the government, from September 2010 to March 2011, Williams operated a vehicle rent-to-own program that targeted individuals with poor credit offering new or almost new vehicles for a low monthly fee. Williams directed Brown to solicit "customers" by placing advertisements for the rent-to-own program on craigslist.org and in Pennysaver. Williams required customers to make an initial down payment, called an "Administration Fee," that ranged from $1,000 to $5,000. In exchange for the Administration Fee and low monthly payments, Williams promised customers an opportunity to drive a late model vehicle that they could eventually own.[2] In reality, the customers were signing mere rental agreements with Enterprise Rent-A-Car (hereinafter "Enterprise"). Enterprise has no rent-to-own program, and the customers were acquiring no right to eventually own the vehicles.

Earlier, Williams negotiated a corporate rate agreement with Enterprise using a fictitious entity he called "2K Tech."

---

[2] The jury heard testimony from nine customer-witnesses, most of whom stated that Williams or Brown told them they would eventually own a vehicle.

Williams directed Brown and others[3] to present rent-to-own customers to Enterprise as 2K Tech employees in order to obtain the corporate rate and to assist those customers in filling out Enterprise's paperwork. The customers paid Williams or Brown directly, who were, in turn, supposed to pay Enterprise. Williams and Brown made payments to Enterprise, but these payments were insufficient to cover the customers' accruing rental fees.

Eventually, Enterprise demanded that the customers return the vehicles on pain of arrest and dispatched a repossession team. Various customers sought an explanation from Williams or Brown to no avail. Meanwhile, at Williams' direction, Brown continued to advertise the rent-to-own program, collect administration and monthly fees, and accompany customers to various Enterprise locations. Before the scheme had run its course, Williams, with Brown's assistance, had obtained no less than $37,633 collectively from 46 customers.

---

[3] Trial evidence established at least five potential participants that Williams supervised, including: Brown, Lucillious Williams, Candace McCullough, and two victim-participants (Vanessa Sabastro and Donika Burriss). The indictment also charged a conspiracy with "persons known and unknown."

At trial, the district court admitted evidence of Williams' previous involvement in three similar schemes.[4] By stipulation read into evidence, the jury heard that Williams negotiated a corporate rate agreement with Thrifty Car Rental (hereinafter "Thrifty"), rented more than 55 vehicles, and amassed a rental arrearage of more than $44,000.[5] Three of the government's witnesses testified that Williams operated two apartment rental schemes in which he marketed programs that purported to allow customers to pay large administrative fees in exchange for discounted rental payments for housing and utilities. In those schemes, Williams continued to accept administrative fees even though customers either never received an apartment or suffered eviction within months. The district court instructed the jury not to consider the evidence for any purpose other than Williams' intent.[6]

---

[4] One common thread was Williams' repeated use of 2K Tech (or some variation) to receive the benefits of corporate rate agreements.

[5] According to one of the government's witnesses, after Enterprise repossessed the vehicle she had acquired through Williams' rent-to-own program, Williams directed her to pick up a second car from Thrifty. Thrifty repossessed this car within the month.

[6] The district court stated, in part: "Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that, because Mr. Williams committed the other acts, he must also have committed the acts charged in the indictment." The district (Continued)

In his defense, Williams testified in detail about his schemes.[7] According to Williams, all of the schemes, including the Enterprise scheme that is the subject of the current appeal, were legitimate business ventures. He testified that the Enterprise scheme failed because his customers did not adequately promote his business by soliciting new customers.[8] He asserted that the Enterprise scheme was simply a credit improvement program and testified that he did not lead customers to believe they would eventually own the rental cars.

The jury found Williams guilty on all counts of wire fraud, mail fraud, and conspiracy to commit wire or mail fraud as charged in the indictment. The jury also found Brown guilty of nine counts of wire fraud and mail fraud, but not guilty of conspiracy.

---

court gave another limiting instruction to the jury before deliberation.

[7] Williams testified about his prior convictions for theft and running a pyramid scheme, which resulted from one of the apartment rental schemes.

[8] When asked how his business was supposed to work, Williams said that the rent-to-own customers were "salespeople" and explained "we're in the business of recruiting salespeople to sell products and services; to get production out of these people so that we can make a high profit." Williams further testified: "Some people's learning curve is slower than others . . . they wouldn't know a business opportunity from a job at McDonald's."

7

The court set the case for sentencing, and a probation officer prepared the presentence reports. Williams' presentence report calculated Williams' base offense level to be 7, pursuant to U.S. Sentencing Guidelines Manual § 2B1.1 (2012). That offense level was increased 14 levels based upon a loss of more than $400,000 but less than $1,000,000, § 2B1.1(b)(1)(H); increased 6 levels because the offense involved 250 or more victims, § 2B1.1(b)(2)(C); increased 2 levels because there were vulnerable victims, § 3A1.1(b)(1); and increased 2 levels for obstruction of justice, § 3C1.1. These adjustments resulted in a total offense level of 31, which, based on a criminal history category III, produced a guideline imprisonment range of 135 to 168 months. Williams objected to the presentence report on various grounds that are not a model of clarity.

At sentencing, the district court considered the presentence report, Williams' objections to that report, and arguments of counsel. The district court then made a number of findings that ultimately resulted in a substantial reduction in Williams' total offense level and his resulting guideline range. First, the district court found the loss to be from $30,000 to $70,000, which increased the base offense level by 6 rather than 14, § 2B1.1(b)(1)(D). Second, the district court found more

than 10 but fewer than 50 victims,[9] which increased the offense level by 2 rather than 6, § 2B1.1(b)(2)(A). Third, the district court found the offense involved a "large number" of vulnerable victims, which increased the offense level by 4 rather than 2, § 3A1.1(b)(1)-(2). Fourth, the district court found Williams played an aggravating role, which increased the offense level by 3, § 3B1.1(b).[10]

Based on its findings,[11] the district court concluded Williams had a total offense level of 24 (as compared to the presentence report's total offense level of 31) and a criminal history category of IV,[12] resulting in a guideline range of 77 to 96 months (as compared to the presentence report's range of 135 to 168 months). The district court expressly considered each of the § 3553(a) factors, concluded that a sentence within the applicable guideline range would be inadequate because the

---

[9] The district court found 46 victims. (J.A. 2002)

[10] The presentence report made no aggravating role adjustment.

[11] The district court ultimately adopted the recommended increase for obstruction of justice based on Williams' false testimony at trial that the customers of the program were actually working for his business and that none of them were ever told they could own the car they were renting.

[12] The district court increased the criminal history category recommended in the presentence report after finding Williams poses a substantial threat of recidivism because of the heightened similarity of his schemes.

"[g]uidelines [did] not adequately address the threat that the defendant poses for recidivism, which [the district court] determine[d] to be extreme," and imposed 120 months incarceration.[13]  The district court sentenced Brown to three years of probation.

## II.

Williams and Brown claim there is insufficient evidence to show a scheme to defraud to support their convictions.  We conclude otherwise and reject the claim.

In considering whether evidence is sufficient to uphold a conviction, we limit our review to determining whether "there is substantial evidence, taking the view most favorable to the government, to support it." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)).  To obtain a conviction under 18 U.S.C.

---

[13] At sentencing, the district court discussed the strong need for deterrence at length:

> The defendant is a serial fraudster.  I don't know how else to express it.  And I believe that he will execute another fraud scheme as soon as he is able to do so, with some minor hope on my part that the imposition of a lengthy sentence might deter him from doing that.  Not because of any internal acceptance that the conduct is wrong or against the law, but because it just has proven to be so costly for him.

(J.A. 2060)

10

§§ 1341 (mail fraud) and 1343 (wire fraud), the government must prove the defendant "(1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme." United States v. Wynn, 684 F.3d 473, 477 (4th Cir. 2012). A scheme to defraud "may be inferred from the totality of the circumstances and need not be proven by direct evidence." United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001) (quoting United States v. Ham, 998 F.2d 1247, 1254 (4th Cir. 1993)). "A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" Beidler, 110 F.3d at 1067 (quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)).

A.

Williams' argument that there is insufficient evidence to show a scheme to defraud is a non-starter. Of the nine customer-witnesses who testified, most stated that Williams or Brown told them they would eventually own the vehicles, a clearly false assertion. Williams directed Brown to place advertisements referring to the scheme as a rent-to-own program, even though there was no possibility that the customers would acquire an ownership interest in the Enterprise vehicles. When the scheme inevitably imploded, the customers' money was gone, their cars were gone, and for all intents and purposes Brown was

11

gone.[14]  Williams, however, persevered.[15]  In short, the jury heard ample evidence from which it could reasonably conclude that Williams' rent-to-own program was nothing more than a fraud.  Consequently, in the light most favorable to the government, there is substantial evidence to support Williams' convictions of wire and mail fraud.

B.

Brown also maintains that the evidence was insufficient to show she intended to defraud.  We find her argument similarly unavailing.  Whatever her understanding might have been when she began working with Williams,[16] by November 2010, Brown was actively promoting a scheme that exhibited all of the hallmarks of a fraud or swindle.  Indeed, in the light most favorable to the government, after Enterprise began repossessing vehicles, Brown continued to collect fees, place ads calling the scheme a rent-to-own program, and promise customers that they could

[14] The jury heard testimony for the government from one witness that after Enterprise repossessed her vehicle, Brown abruptly stopped answering her calls.  (J.A. 223)

[15] The jury heard testimony that several customers called Williams after Enterprise repossessed their cars, and Williams told them to "hold tight" and he would "take care of it."  But he did not take care of it.  Williams refused to return the customers' money, and, in at least one instance, he took even more money from a customer and brought her to Thrifty to pick out another car.  Thrifty repossessed that car within the month.

[16] The government concedes Brown may not have initially had the requisite intent.

12

eventually own the cars. It is clear under the circumstances that the jury heard ample evidence from which it could conclude that Brown knowingly advanced Williams' fraudulent scheme.

### III.

Williams further claims his conspiracy conviction cannot stand because the jury did not find Brown, his only charged co-conspirator, guilty.[17] We have rejected this argument on multiple occasions and do so again here.

An inconsistent jury verdict does not, in and of itself, require reversal or automatically subject the jury's collective judgment to review. United States v. Powell, 469 U.S. 57, 65-6 (1984). Given the variables involved, it is "hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course" and "nothing in the Constitution would require such a protection." Id. at 65. For these reasons, a defendant charged with conspiracy is not entitled to an acquittal simply because the same jury acquitted

---

[17] We note that Williams' argument, which focuses on sufficiency of the evidence, does not properly frame the issue. Williams appears to contest whether his conviction for conspiracy can stand despite the acquittal of his alleged co-conspirator. To the extent Williams is alleging insufficient evidence of agreement to support his conspiracy conviction, we conclude there is substantial evidence of an agreement viewing it in the light most favorable to the government.

his only charged co-conspirator.[18] <u>United States v. Collins</u>, 412 F.3d 515, 520 (4th Cir. 2005) (refusing to overturn a conspiracy conviction merely because the same jury acquitted a co-conspirator); <u>United States v. Thomas</u>, 900 F.2d 37, 40 (4th Cir. 1990)(holding that an acquittal of sole co-conspirator does not require reversal of defendant's conviction); <u>see also</u> <u>United States v. Andrews</u>, 850 F.2d 1557, 1561 (11th Cir. 1988) (en banc) ("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand.").

Here, as the defendant in <u>Collins</u> argued, Williams argues for reversal of his conspiracy conviction simply because the jury acquitted his named co-conspirator. Relying on well-settled precedent, we reject Williams' argument.

---

[18] Here, the indictment alleges that Williams conspired not only with Brown but with others both known and unknown to the grand jury. The government may prove a conspiracy even if the defendant's co-conspirator remains unknown, so long as it presents evidence of an agreement between two or more persons. <u>Rogers v. United States</u>, 340 U.S. 367, 375 (1951) ("[T]he identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown"); <u>United States v. Rey</u>, 923 F.2d 1217, 1222 (6th Cir. 1991). Apart from the allegations here of a conspiracy involving Brown, the jury could have concluded that a conspiracy existed between Williams and one or more of the other uncharged participants in the scheme. Such a determination was well within the prerogative of the collective decision-making power of the jury based upon the evidence before it.

14

IV.

Williams argues the district court erroneously admitted evidence of his past fraudulent schemes. He alleges this evidence is inadmissible under Federal Rules of Evidence 404(b) (hereinafter "F.R.E"). We disagree.

We review evidentiary rulings for abuse of discretion and we will not find a district court "to have abused its discretion unless its decision to admit evidence under Rule 404(b) was arbitrary and irrational." United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011). Although F.R.E. 404(b) excludes evidence of other crimes, wrongs, or acts proffered solely to prove a defendant's bad character, "[s]uch evidence . . . may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Basham, 561 F.3d 302, 326 (4th Cir.2009) (quoting Fed. R. Evid. 404(b)).

To establish intent, the government introduced evidence that Williams previously operated two apartment rental schemes and one car rental scheme (using Thrifty Rental Cars). Each of those schemes was close enough in time and had substantial enough similarities to the conduct charged in the indictment to be probative of Williams' intent. See United States v. Queen, 132 F.3d 991 (4th Cir. 1997) (affirming the district court's admission of evidence of prior similar acts with a high degree

15

of similarity to the charged act when the prior acts occurred nine years before).  Given that the district court properly instructed the jury as to the limited purpose of this evidence both following its admission and immediately before submitting the case to the jury, we find no abuse of discretion in admitting it.

V.

Finally, Williams maintains the district court erred in applying two sentencing enhancements: one based on a finding that there were vulnerable victims and the other based on a finding that Williams played an aggravating role in the scheme.[19]

---

[19] To the extent Williams argues his sentence was substantively unreasonable, we disagree.  In considering the substantive reasonableness of a sentence we take into account the "totality of circumstances," recognizing that "if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness." Gall v. United States, 552 U.S. 38, 51 (2007) (emphasis added).  Instead, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the variance." Id.  In giving such due deference, we decline to disturb the district court's thoughtfully considered finding which included that:

> [I]n this case, it's my conclusion that the Federal Sentencing Guidelines do not adequately address the threat that the defendant poses for recidivism, which I determine is extreme ... the consequence of this is that I will place the guidelines to one side and instead impose a sentence that I believe appropriately meets that very legitimate public interest, that adequately protects the public.

(J.A. 2061)

16

We review the district court's factual findings on such issues for clear error. United States v. Thorson, 633 F.3d 312, 317 (4th Cir. 2011); United States v. Edwards, 188 F.3d 230, 238 (4th Cir. 1999). Finding the district court did not commit clear error as to either enhancement, we affirm Williams' sentence.

A.

Williams contends the district court erred in applying the vulnerable victims enhancement under U.S.S.G. § 3A1.1(b)(1). We find no clear error in the district court's factual finding of victim vulnerability.

U.S.S.G. § 3A1.1(b)(1) provides a two level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The defendant receives an additional two level enhancement if the offense involved a "large number of vulnerable victims." U.S.S.G. § 3A1.1(b)(2). A victim may be "vulnerable" if he is "particularly susceptible to criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. In order to apply the enhancement, the district court must also determine that "the defendant knew or should have known of the victim's unusual vulnerability." Id.

We have specifically held that individuals with poor credit ratings who have been turned down elsewhere for loans, under appropriate circumstances, may be considered vulnerable victims,

17

stating: "It is manifest that [such] persons ... would be unusually vulnerable, that is, more prone than most to yield to the melodious beseeching of a charlatan who assures them that their dreams are within their grasp." United States v. Holmes, 60 F.3d 1134, 1136-37 (4th Cir. 1995).

In the present case, the district court stated on the record and with particularity the vulnerable nature of these victims and that Williams targeted them:

> I find that it was a scheme that was very much targeted at people who were in dire personal financial straits. People who had bad credit or people who had no credit, and yet still need, sometimes desperately needed, transportation. And so, yeah, the scheme in the Court's mind, based on the evidence that was presented, was directed at people who were particularly vulnerable to its appeal.

(J.A. 2013) These findings, coupled with the total number of victims,[20] supported the court's four level increase pursuant to section 3A1.1(b)(1) and (2). Accordingly, we reject Williams' challenge.

### B.

Williams also claims there is insufficient evidence to support a three level aggravating role adjustment. Once again, we find otherwise.

---

[20] See supra note 9.

18

To apply an aggravating role enhancement under U.S.S.G § 3B1.1(b), the district court must find (1) that "the defendant was a manager or supervisor (but not an organizer or leader)" and (2) that "the criminal activity involved five or more participants or was otherwise extensive." (emphasis added).

In determining whether the defendant was a manager or supervisor, "the aggravating role adjustment is appropriate where the evidence demonstrates that the defendant controlled the activities of other participants or exercised management responsibility." United States v. Llamas, 599 F.3d 381, 390 (4th Cir. 2010) (internal quotation marks omitted). The district court heard considerable evidence of Williams' managerial and supervisory activities. Indeed, the district court could have concluded the scheme was totally of Williams' making and subject to his supervision.[21] In any event, Williams solicited customers through advertising, accepted payments from those customers, directed Brown and others to assist the customers in filling out Enterprise paperwork, and directed Brown and others to work with Enterprise to open the fraudulent corporate account.

---

[21] The district court found Williams was a manager or supervisor under U.S.S.G. § 3B1.1(b) rather than a leader or organizer under U.S.S.G. § 3B1.1(a) as proposed in the presentence report, which resulted in an enhancement by three instead of four.

19

As to the breadth of the criminal activity, the defendant need only have managed or supervised the activities of at least one other person in a scheme that involved five or more participants. United States v. Bartley, 230 F.3d 667, 673 (4th Cir. 2000). Alternatively, the criminal activity can be "otherwise extensive." In assessing whether an activity is otherwise extensive, we have held that courts may consider "all persons involved during the course of the entire offense." United States v. Ellis, 951 F.2d 580, 585 (4th Cir. 1991) (quoting U.S.S.G. § 3B1.1, cmt. n.3). "Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1(b), cmt. n.3.

As to whether the criminal activity involved five or more participants or was otherwise extensive, the district court could have properly found both. Trial evidence showed at least five participants in addition to Williams: Brown, Lucillious Williams, Candace McCullough, and two victim-participants (Vanessa Sabastro and Donika Burris). Considerable evidence, indeed the very nature of the scheme, also supports a finding that the criminal activity was otherwise extensive (e.g., the targeted advertising, the false statements made to individual victims and to Enterprise, the sheer number of victims, the number of payments secured, and the unknowing participation of

20

numerous victims and Enterprise employees).  In light of this evidence, we conclude the district court did not commit clear error in making the factual findings that led it to apply the three level aggravating role enhancement under U.S.S.G § 3B1.1(b).

## VI.

For the reasons stated, we affirm in all respects.[22]

---

[22] Williams and Brown also raise a number of additional arguments, all of which we have considered and find meritless.

Williams and Brown maintain Count 1 of the indictment is duplicitous.  We reject this argument because, as the Supreme Court of the United States has held, "the conspiracy is the crime, however diverse its objects." Braverman v. United States, 317 U.S. 49, 54 (1942).  See also United States v. Schlesinger, 2008 WL 244226(2d Cir. 2008); United States v. Smith, 891 F.2d 703, 712 (9th Cir. 1989).

Williams and Brown also claim Counts 2-31 of the indictment are multiplicitous.  We agree with the reasoning of the district court and reject this argument. United States v. Williams, No. 1:11-162 (D. Md. Oct. 12, 2011).

Williams argues the district court erred in amending the indictment's references to "craigslist.com" to "craigslist.org." We agree with the reasoning of the district court that the amendment was non-substantive and, therefore, permissible. (J.A. 1479-1495)

Brown argues the district court erred by failing to sever the trial.  We reject this argument because there is a preference for joint trials of defendants who are indicted together, particularly where they are alleged "to have participated in the same act or transaction" constituting the offense. Zafiro v. United States, 506 U.S. 534, 537 (1993); United States v. Allen, 491 F.3d 178, 189 (4th Cir. 2007) ("Without a strong showing of prejudice, severance is not (Continued)

21

justified based on the mere disparity of the evidence adduced against individual defendants.").